UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FOREWORK, LLC,

                                  Plaintiff,          1:22-CV-547 (GTS/ATB)

v.

ANDREW CULL; and AGEMA CORPORATION,

                                  Defendants.
_____

APPEARANCES:                                OF COUNSEL:

BOND SCHOENECK & KING, PLLC         STUART F. KLEIN, ESQ.
  Counsel for Plaintiff                         MARA DEW AFZALI, ESQ.
22 Corporate Woods Blvd., Suite 501
Albany, NY 12211

MEISTER SEELIG & FEIN PLLC            JEFFREY SCHREIBER, ESQ.
  Counsel for Defendants                    RICHARD J. JANCASZ, ESQ.
125 Park Avenue, 7th Floor
New York, NY 10017

CONWAY DONOVAN & MANLEY PLLC    ROBERT C. TIETJEN, ESQ.
  Co-Counsel for Defendants
50 State Street, Second Floor
Albany, NY 12207

GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

      Currently before the Court, in this action filed by Forework, LLC ("Plaintiff") against Andrew Cull and Agema Corporation ("Defendants") asserting claims for breach of contract, unjust enrichment, and fraud related to an unfinished software project pursuant to 28 U.S.C. § 1332(a)(1), is Defendants' motion to dismiss the Complaint or transfer venue pursuant to Fed. R. Civ. P. 12(b)(3), or, in the alternative, to dismiss the Complaint for failure to state a claim

1

upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 10.) For the reasons set forth below, Defendants' motion is denied.

I.   **RELEVANT BACKGROUND**

   A. **The Complaint**

Liberally construed, Plaintiff's Complaint alleges as follows. (Dkt. No. 1.)[1]

Plaintiff ("Forework") is a limited liability company duly formed under the laws of the State of New York, with offices located in Glenmont, NY. (*Id.*, ¶ 8.) Forework is a start-up human resources consulting and employment law compliance company. (*Id.*, ¶ 13.) Forework's founder is Emina Poricanin ("Poricanin"). (*Id.*) Defendant Agema Corporation ("Agema") is a corporation organized under the laws of the State of Washington; Defendant Cull ("Cull") is the founder and chief executive officer of Agema. (*Id.*, ¶¶ 9–10.)

In July of 2020, Poricanin and Cull discussed a new cloud-based payroll software system that Forework wanted to create. (*Id.*, ¶ 16.) "Cull knowingly and intentionally represented to Forework that Agema was a competent payroll software developer." (*Id.*, ¶ 19.) "Cull advised Forework that Agema had experience in developing payroll software and the project that Forework was seeking to have designed and developed was within their area of expertise and subject matter specialty." (*Id.*, ¶ 26.)

On August 26, 2020, Cull emailed Poricanin a proposal to develop the software in four months for $100,000. (*Id.*, ¶ 34.) Poricanin replied that the "budget is perfect" and the "timeline would also work," and "[y]ou've got a deal…." (*Id.*, ¶ 35.) Plaintiff decided to retain Defendants to develop the software based on Cull's representations about Agema's abilities, the four-month timeframe, and the $100,000 quoted fee. (*Id.*, ¶ 36.)

---

[1]   The facts alleged in the Complaint are assumed to be true for purposes of this decision only. *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (citations omitted).

After Forework decided to retain Defendants, Cull emailed to Poricanin a Master Services Agreement (the "Agreement"). (*Id.*, ¶ 39.) The Agreement "contained a detailed Statement of Work setting forth with specificity the work that Agema was to perform on behalf of Forework." (*Id.*, ¶ 40.) The Statement of Work indicated that Agema would provide to Forework a number of "Services" and "Deliverables" in exchange for the fee of $100,000. (*Id.*, ¶¶ 49–51.) The Deliverables included a "Cloud-Based Payroll and Time Tracking Software." (*Id.*, ¶ 50.) Pursuant to the Statement of Work, the Deliverables were to be "fully completed and delivered to Forework no later than December 31, 2020." (*Id.*, ¶ 54.)

"Forework agreed to these terms," and "had an Agreement in place" and "a meeting of the minds on the Agreement's material terms and conditions." (*Id.*, ¶¶ 52–53.) "[T]he parties proceeded in early September 2020 under the terms of the Agreement." (*Id.*, ¶ 53.) December 31, 2020 passed and no completed software was delivered to Forework. (*Id.*, ¶ 56.) Cull claimed the project would be completed by April 2021, and from January to April 2021, he represented that Agema was working on the project and making progress. (*Id.*, ¶¶ 57–58.)

The software was not delivered in April 2021; and Forework "told Agema and Cull that the project needed to be completed by October 2021, because that is when Forework would be exhibiting at major conferences, to hundreds of potential buyers and users of the Forework payroll." (*Id.*, ¶ 61.) In August 2021, Cull "threatened to stop work unless the last and final payment of the $100,000 project fee was paid," and Plaintiff paid the last installment of $25,000. (*Id.*, ¶ 62.) Sometime thereafter, Cull admitted that Agema would not have the software completed by October 2021. (*Id.*, ¶ 66.)

Based on these problems, Forework was forced to retain a software engineer, Brian Cohen ("Cohen") to help Agema finish the project. (*Id.*, ¶ 69.) Cohen and Forework gained

3

access to Agema's work product and discovered that it was "nothing more than a mess of a code databases," with "thousands of lines of code that, effectively, did not talk to each other and that were not functioning." (*Id.*, ¶ 74.) Sometime in March 2022, Cull admitted to Cohen that "it would be more efficient to start the project anew rather than try to complete the work product that was already there." (*Id.*, ¶ 77.) Ultimately, Forework "terminated Agema" in April 2022 and demanded a refund; Cull and Agema have refused to issue a refund. (*Id.*, ¶¶ 80–81.)

### B. The Agreement Referenced in the Complaint

In support of their motion, Defendants have submitted a purported copy of the Agreement referenced in the Complaint. (Dkt. No. 10-2.)[2] The Agreement is signed by Cull on behalf of Agema, but it is not signed by Poricanin on behalf of Forework. (*Id.*, at 2.) Cull has submitted a declaration wherein he states that he is "certain both Plaintiff and Agema signed the MSA as I have personally seen a fully executed copy of the MSA." (Dkt. No. 10-1, ¶ 4.) Cull states that he has been unable to locate a copy of the signed Agreement. (*Id.*)

Along with its opposition papers, Plaintiff has also submitted a copy of the Agreement, which is signed by Cull but not by Poricanin. (Dkt. No. 15-2.) Poricanin states in a declaration that the Agreement is a draft and she does not recall ever signing the Agreement. (Dkt. No. 15-1, ¶ 31.)

As relevant here, both copies of the Agreement submitted to the Court contain a clause which states as follows: "Washington State law governs this Agreement," and [t]he parties consent to exclusive jurisdiction and venue in any Washington State or federal court located in King County, Washington." (Dkt. No. 10-2, at 5; Dkt. No. 15-2, at 5.)

---

[2] In its Complaint, Plaintiff alleges that, before commencing this action, Poricanin attempted to locate the Agreement referenced in the Complaint, but that she was unable to find a fully executed, signed copy of it. (Dkt. No. 1, ¶ 52.)

I.   **THE PARTIES' BRIEFING ON DEFENDANTS' MOTION**

   A.   **Defendants' Memorandum of Law-in Chief**

In their memorandum of law-in chief, Defendants argue that the Complaint should be dismissed or transferred because a Washington forum is required by the parties' Agreement. (Dkt. No. 10-3, at 12.)  Defendants cite to Section 8.7 of the Agreement, which states that "[t]he parties consent to exclusive jurisdiction and venue in any Washington State or federal court located in King County, Washington."  (Dkt. No. 10-2, at 5.)  Defendants also assert various alternative grounds for dismissal.  According to Defendants, Cull cannot be individually liable for a breach of contract because he was not a party to the Agreement.  (Dkt. No. 10-3, at 14.)  Defendants argue that Plaintiff's unjust-enrichment claim must be dismissed because there is a valid contract between the parties.  (*Id.*, at 15.)  Further, Defendants assert that Plaintiff's fraud/fraud-in-the-inducement claim is duplicative of its breach-of-contract claim and fails to meet the heightened pleading standard set forth in Fed. R. Civ. P. 9(b).  (*Id.*, at 16–20.)

### B. Plaintiff's Opposition Memorandum of Law

Plaintiff opposes dismissal or transfer to a Washington forum, arguing that there is no valid forum-selection clause applicable to Plaintiff's claims. (Dkt. No. 15, at 10.) Plaintiff argues that the Agreement was not signed by both parties. (*Id.*) According to Plaintiff, "there is no valid written contract that governs the parties' agreement, and Forework's breach-of-contract claim instead relies on the oral agreement and representations between the parties." (*Id.*) Plaintiff further argues that Forework states a plausible breach-of-contract claim against both Agema and Cull, "who were both parties to the negotiations and agreements in dispute." (*Id.*, at 13.) As to its unjust-enrichment claim, Plaintiff argues that it is permitted to plead in the alternative at this stage. (*Id.*, at 14.) Plaintiff argues that its fraud/fraud-in-the-inducement claim is not duplicative of its breach-of-contract claim, and further, that it meets Fed. R. Civ. P. 9(b)'s heightened pleading standard. (*Id.*, at 14–18.)

### C. Defendants' Reply Memorandum of Law

In reply, Defendants argue that there was a meeting of minds regarding the material terms of the Agreement, including the forum-selection clause. (Dkt. No. 18, at 8.) Defendants argue that this clause appears in each version of the Agreement produced in this case. (*Id.*) According to Defendants, "the parties always intended for all legal disputes regarding the MSA to proceed exclusively in Washington courts and be decided under Washington law." (*Id.*) Finally, Defendants argue that Plaintiff cannot maintain its breach-of-contract claim against Cull or its unjust-enrichment and fraud/fraud-in-the-inducement claims. (*Id.*, at 10–14.)

## I. RELEVANT LEGAL STANDARDS

### A. Standard Governing Motion to Dismiss for Improper Venue

6

Pursuant to Fed. R. Civ. P. 12(b)(3), a defendant may seek dismissal of a complaint for improper venue. Fed. R. Civ. P. 12(b)(3). In general, the plaintiff bears the burden of demonstrating that venue is proper when served with a motion to dismiss under Rule 12(b)(3). *Minholz v. Lockheed Martin Corp.*, 227 F. Supp. 3d 249, 260 (N.D.N.Y. 2016) (McAvoy, J.). The plaintiff satisfies that burden by pleading facts sufficient to demonstrate a *prima facie* showing of venue; in analyzing this issue the complaint's allegations are viewed in the light most favorable to the plaintiff. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).

### B. Standard Governing Motion for Change of Venue

In the interest of justice and for the convenience of the parties, a district court may decide to transfer a civil action to any other district where it might have been brought, or to any district to which all parties have consented. 28 U.S.C. § 1404(a). The party moving for change of venue bears the burden of proof, and courts "have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion." *New York Marine and Gen. Ins. Co. v. Lafarge N.A., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). "Among the factors to be considered in determining whether to grant a motion to transfer venue are, *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *New York Marine and Gen. Ins. Co.*, 599 F.3d at 112 (internal quotation omitted).

However, there is no strict formula for the application of these factors, and no single factor is determinative. *Ward v. Stewart*, 133 F. Supp. 3d 455, 460 (N.D.N.Y. 2015) (Hurd, J.)

7

(citation omitted). Instead, these factors should be applied and weighed in the context of the individual circumstances of the particular case. *Ward*, 133 F. Supp. 3d at 460. "Section 1404(a) reposes considerable discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Red Bull Associates v. Best Western Int'l*, 862 F.2d 963, 967 (2d Cir. 1988) (internal citation omitted).

### C. Standard Governing Motion to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn. 15–16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n. 20 (citing Supreme Court cases). On the other hand, the Supreme Court has

held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n. 17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n. 32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak*, 629 F. Supp. 2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–82 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. 556–51. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 555–70. The explained that, while this does not mean that a pleading need "set out in detail the facts upon

which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 555 n. 3. More specifically, the "[f]actual allegations must be enough to raise a right of relief above the speculative level [to the plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n] that—the pleader is entitled to relief." *Id.*, at 679 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Similarly, a pleading that only "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

A few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[3]

### D. Standard Governing the Pleading of Fraud Claims

Rule 9(b) of the Federal Rules of Civil Procedure requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), "a complaint alleging fraud must (1) specify the

---

[3] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (internal quotation marks omitted). The purposes of Rule 9(b) are "to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (internal quotation marks omitted).

I.   ANALYSIS

A.  **Whether the Court Should Dismiss the Complaint for Improper Venue**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Plaintiff in its opposition memorandum of law. To those reasons, the Court adds the following analysis.

Defendants move for dismissal pursuant to Rule 12(b)(3) on the basis that venue is improper in the Northern District of New York because the forum-selection clause in the Agreement requires venue in Washington State. (Dkt. No. 10-3, at 12–13.) However, "[w]hether venue is . . . 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." *A. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. Of Texas*, 571 U.S. 49, 55 (2013). Accordingly, "a case filed in a district that falls within [28 U.S.C.] § 1391 may not be dismissed under . . . Rule 12(b)(3)." *Id.* at 56. Rather, the transfer provision set forth at 28 U.S.C. § 1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district," and the doctrine of forum *non*

*conveniens* is "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum." *Id.* at 59–60.

Thus, the forum-selection clause cited by Defendants is not a proper basis for dismissal pursuant to Fed. R. Civ. P. 12(b)(3), and the Court need only evaluate whether venue is proper pursuant to 28 U.S.C. § 1391, the provision cited by Plaintiff. (Dkt. No. 1, ¶ 12.) Section 1391(b)(2) states that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2).

Among other things, Plaintiff alleges that it is based in Glenmont, New York, the agreed-upon software was to be delivered to Plaintiff in New York, it retained an Albany-based software engineer to assist with the project, and Defendants breached the contract by not delivering the software to Forework in New York. (Dkt. No. 1, ¶¶ 8, 54, 69, 83.) These allegations indicate that a substantial part of the events giving rise to Plaintiff's claims occurred in the Northern District; and, viewed in the light most favorable to Plaintiff, they suffice to demonstrate a *prima facie* showing of venue at this stage. Accordingly, Defendants' motion to dismiss for improper venue must be denied.

B. **Whether the Court Should Transfer Venue of this Action**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Plaintiff in its opposition memorandum of law. To those reasons, the Court adds the following analysis.

"Although a forum-selection clause does not render venue in a court . . . 'improper' within the meaning of . . . Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a)." *Atl. Marine Const. Co.*, 571 U.S. at 59. Defendants seek to enforce

the Agreement's forum-selection clause and transfer venue of this action pursuant to 28 U.S.C. § 1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause," and [o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine Const. Co.*, 571 U.S. at 62.

In this case, the Court finds that the forum-selection clause in the Agreement is not valid and enforceable at this stage. Although the forum-selection clause appears in the Agreement referenced by Plaintiff in the Complaint, Defendants have not submitted a copy of the Agreement *signed by Plaintiff*. Indeed, the Complaint alleges that the Agreement was never signed and the parties proceeded by way of an oral contract that simply reflected certain material terms from the Agreement, such as the scope of the project, the timeframe, and the fee to be paid. (Dkt. No. 1, ¶¶ 49–53.) In other words, taking Plaintiff's allegations as true, the parties did not agree to the forum-selection clause.

Defendant Cull has submitted a declaration to the contrary, stating that he is "certain both Plaintiff and Agema signed the MSA as I have personally seen a fully executed copy of the MSA." (Dkt. No. 10-1, ¶ 4.) The problem (apart from the conspicuous absence of such a copy in this action) is that Poricanin swears that she does not recall ever signing the Agreement on behalf of Forework. (Dkt. No. 15-1, ¶ 31.) In sum, the Court finds that Defendants have not demonstrated clear and convincing evidence that the parties agreed to the forum-selection

clause requiring venue in a Washington forum. Therefore, the Court declines to exercise its discretion to transfer the case, and Defendants' motion to do so must be denied.[4]

### C. Whether Plaintiff States a Claim for Breach of Contract Against Cull

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Plaintiff in its opposition memorandum of law. To those reasons, the Court adds the following analysis.

As indicated above in Part II of this Decision and Order, Defendants argue that Plaintiff cannot state a breach-of-contract claim against Cull because he was not a party to the Agreement. (Dkt. No. 10-3, at 14–15.) However, as discussed above, Defendants have not provided a signed copy of the Agreement, and Plaintiff plausibly alleges that it retained *both* Agema and Cull. (Dkt. No. 1, ¶¶ 36–38.)

To state a claim for breach of contract against Defendants, Plaintiff must allege facts that plausibly suggest "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Habitzreuther v. Cornell Univ.*, 14-CV-1229, 2015 WL 5023719, at *5 (N.D.N.Y. Aug. 2015) (Sharpe, C.J.).[5] Here, Plaintiff alleges that it agreed to retain Defendants to develop the payroll software, it paid them the agreed-upon fee of $100,000, they failed to deliver the software, and Plaintiff suffered resulting damages. (Dkt. No. 1, ¶¶ 82–88.) Accepting these allegations as

---

[4] The Court notes that Defendants have not provided any other reasons in support of their motion to transfer venue, and as such, there is no basis to conclude that transfer is convenient to the parties and in the interest of justice. If Defendants were to locate a signed copy of the Agreement or provide additional reasons for transfer, however, the Court might revisit the issue.

[5] The Court notes that the forum-selection clause in the Agreement specifies that it is governed by Washington State law. (Dkt. No. 10-2, at 5). Because the Agreement is not signed (and because the Court has not been persuaded that the law of Washington State materially differs from that of New York State), however, the Court will apply the law of New York State in evaluating Plaintiff's claims.

true, Plaintiff has stated a valid claim for breach of contract against Defendants Agema and Cull.

### D. Whether Plaintiff States a Claim for Unjust Enrichment

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Plaintiff in its opposition memorandum of law.  To those reasons, the Court adds the following analysis.

To assert a valid claim for unjust enrichment under New York law, a Plaintiff must allege facts plausibly showing as follows: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotations omitted).  Under New York law, there can be no cause of action for unjust enrichment when there is a valid contract governing the same subject matter between the parties.  *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987).  "Courts have permitted pleading in the alternative in the face of a written agreement, however, when there is a dispute as to the agreement's validity or enforceability."  *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 195 (S.D.N.Y. 2009).

As discussed above, Plaintiff has alleged that it agreed to a contract with Defendants, the material terms of which are reflected in the unsigned Agreement.  Nonetheless, Plaintiff also alleges that, assuming "there is a dispute as to the existence of such an agreement, Defendants have been unjustly enriched as a result of their receipt of payment from Forework to design and development a payroll software system that Defendants have failed to deliver." (Dkt. No. 1, ¶ 90.)  Defendants argue that there is no dispute about the existence of a contract in this case. (Dkt. No. 18, at 10.)  But it is unclear at this stage which contract the parties agreed to—an oral

contract, the written Agreement, or some combination thereof—and whether that contract will ultimately prove valid and enforceable. Therefore, the Court will permit Plaintiff to plead unjust enrichment in the alternative to its breach-of-contract claim.

As to the merits, the Court finds that Plaintiff has adequately alleged the essential elements of its unjust-enrichment claim, namely that Plaintiff conferred a benefit on Defendants (the $100,000 fee), at Plaintiff's expense, and that Plaintiff should be awarded restitution based on equity and good conscience because Defendants did not deliver the desired payroll software. (Dkt. No. 1, ¶¶ 91–97.) Accordingly, the Court finds that Defendants are not entitled to dismissal of Plaintiff's unjust-enrichment claim.

### E.  Whether Plaintiff States a Claim for Fraud/Fraud in the Inducement

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Plaintiff in its opposition memorandum of law. To those reasons, the Court adds the following analysis.

Defendants argue that Plaintiff's fraud/fraud-in-the-inducement claim should be dismissed because it is duplicative of its breach-of-contract claim. (Dkt. No. 10-3, at 16.) Defendants are correct that "[a] fraud claim should be dismissed as redundant when it merely restates a breach of contract claim, i.e., when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract." *First Bank of Americas v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 690 N.Y.S.2d 17, 20–21 (N.Y. App. Div., 1st Dep't 1999). Therefore, "[t]o maintain a fraud claim alongside a breach-of-contract claim, a plaintiff must (1) 'demonstrate a legal duty separate from the duty to perform under the contract'; (2) 'demonstrate a fraudulent misrepresentation collateral or extraneous to the contract'; or (3) 'seek special damages that are caused by the misrepresentation and unrecoverable as contract

17

damages.'" *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010) (quotation omitted).

Here, Plaintiff's fraud/fraud-in-the-inducement claim goes beyond the alleged promises contained in the contract, i.e., that Defendants would develop the payroll software. Plaintiff has plausibly alleged that Defendants made false and fraudulent misrepresentations to induce Plaintiff to enter into the contract, including that Defendants had experience and expertise in building payroll software programs. (Dkt. No. 1, ¶¶ 26, 99.) Thus, Plaintiff's claim is not subject to dismissal as duplicative.

As for whether Plaintiff's claim satisfies Fed. R. Civ. P. 9(b), Defendants argue that it falls short because the Complaint "fails to allege *any* specific statements made by either of the Defendants in support of its fraud claim, let alone identify when and where such statements were made or explain why any such statements were false at the time they were made." (Dkt. No. 10-3, at 19.) Defendants further argue that "Plaintiff has failed to meet its burden to allege facts that could plausibly establish either of the Defendants' alleged fraudulent intent." (*Id.*)

"To state a claim for fraud in the inducement, the party must allege: (i) a material representation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation . . . ; and (iv) resulting damages." *Johnson v. Nexttel Commu'ns, Inc.*, 660 F.3d 131, 143 (2d Cir. 2011) (citing *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478 (2007)). "In addition, the plaintiff must allege specific facts as to the fraud, including the misleading statements, speaker, time, place, individuals involved, and specific conduct at issue." *Id.* (citing Fed. R. Civ. P. 9(b)). However, "Rule 9(b) does not demand that a plaintiff plead every single fact related to the fraud with exact precision, prior to discovery." *Cohen v. Prudential-Bache Securities, Inc.*, 713 F. Supp. 653, 659 (S.D.N.Y. 1989).

Here, the heart of Plaintiff's fraud claim is that it was induced by Defendants' false and fraudulent representations to enter into a contract with them to develop the payroll software. (Dkt. No. 1, ¶¶ 99–109.) This claim is supported by specific allegations including allegations that, in late July and August of 2020, Cull represented to Poricanin that "he knew and had previously developed software systems," that "Agema was a competent payroll developer," and that "the project that Forework was seeking to have designed and developed was within their area of expertise and subject matter specialty." (*Id.*, ¶¶ 16, 19, 26.) The Court finds that these allegations state with sufficient particularity the circumstances constituting fraud to give Defendants fair notice. Plaintiff further alleges that Cull knew his representations were false, (*id.*, ¶ 102), which raises a plausible inference that he acted with fraudulent intent. Finally, Plaintiff has plausibly alleged that it reasonably relied on Cull's representations in entering into the contract with Defendants, and that it suffered resulting damages when Defendants failed to deliver the desired payroll software. (*Id.*, ¶¶ 104, 109.) Accepting these allegations as true, the Court finds that Plaintiff has stated a valid claim for fraud in the inducement.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss or transfer venue (Dkt. No. 10) is <u>**DENIED**</u>.

Dated: April 13, 2023
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge